Filed 9/12/16  Tiffany F. v. Superior Court CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TIFFANY F.,<br><br>　　　　Petitioner,<br><br>　　　　　　v.<br><br>THE SUPERIOR COURT OF STANISLAUS COUNTY,<br><br>　　　　Respondent;<br><br>STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>　　　　Real Parties in Interest. | F073854<br><br>(Super. Ct. Nos. 517233, 517234, 517235, 517232)<br><br><br>**OPINION** |

-----

## THE COURT[*]

ORIGINAL PROCEEDING; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

TIFFANY F., in pro. per. for Petitioner.

No appearance for Respondent.

John P. Doering, county Counsel, and Maria E. Ratliff, Deputy County Counsel for Real Party in Interest.

-ooOoo-

-----

[*]　　Before Kane, Acting P.J., Poochigian, J. and Franson, J.

Tiffany F. (mother) in propria persona seeks extraordinary writ relief from the juvenile court's orders issued at a contested 12-month review hearing terminating her reunification services and setting a Welfare and Institutions Code section 366.26[1] hearing as to her four minor children. She contends the court relied on misinformation in ruling and must therefore return the children to her custody or reinstate reunification services. We deny the petition.[2]

## PROCEDURAL AND FACTUAL SUMMARY

In March 2015, the Stanislaus County Community Services Agency (agency) took mother's then 10- and seven-year-old sons and eight-year-old twin daughters into protective custody after mother refused to separate herself and the children from her then-boyfriend Marcos B. For three years prior to taking this step, the agency had received reports that mother and Marcos used drugs and that Marcos hit and verbally abused the children and engaged in domestic violence with mother. One of the daughters stated that mother had not eaten or slept in several days out of fear that Marcos would hurt them during the night.

In June 2015, the juvenile court exercised its dependency jurisdiction over the children and ordered them removed from parental custody. The court denied the children's father reunification services and ordered mother to participate in parenting instruction and mental health, domestic violence and substance abuse services. The court also ordered that the children were not to have any contact with Marcos. The agency placed the children together in foster care.

Mother did not participate in reunification services and continued to engage in domestic violence with Marcos, who drank excessively and used drugs. In February

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Real party in interest filed a motion asking this court to dismiss mother's petition for extraordinary writ for failure to comply with California Rules of Court, rule 8.452. We deny the motion.

2

2016, they were married. In addition, mother refused to leave him or limit her contact with him. She repeatedly asked the social worker if the juvenile court would allow her to reunify with her children while living with Marcos despite being told each time the court would not allow it. She also defied the court's no-contact order between Marcos and the children by allowing him to hide in the bathroom during visitation so that he could see them.

Meanwhile, the children were no longer placed together but were making progress in their respective homes. Mother's youngest son had to be removed from his foster care placement because he was engaging in very disturbing hoarding behavior. He was placed with relatives and was adjusting to their home. The relatives were willing to offer him foster care until he turned 18 years old. Mother's oldest son was placed with a foster mother who was willing to provide him a home until he was 18. He told the social worker he was afraid of Marcos because he beat him and his mother. He was afraid that Marcos would harm his foster family. The agency discussed placing the daughters with relatives who had expressed an interest but were afraid of mother. They said they might be more willing to consider placement once the children were settled.

In its report for the 12-month review hearing, the agency recommended the juvenile court terminate mother's reunification services and proceed to permanency planning.

The juvenile court conducted the contested 12-month review hearing in June 2016. Mother testified she completed a group parenting class, was abstaining from drug use and had been participating in one-on-one domestic violence counseling for six months. Mother conceded that the children were harmed by seeing Marcos hit her but she did not believe that her oldest son told the social worker that Marcos hit him and would not believe it unless her son told her personally. She believed she could protect the children if they were returned to her custody and believed they would be safe around Marcos

3

because he was no longer drinking alcohol and had been clean and sober for a year. She did not agree with the agency's report that Marcos hurt the children.

At the conclusion of the hearing, the juvenile court found that it would be detrimental to return the children to mother's custody. The court also found that the agency provided her reasonable reunification services but that she made minimal progress, noting that she was only in the initial stages of domestic violence treatment. The court further found there was not a substantial probability the children could be returned to her in the three months remaining before the 18-month review hearing and terminated her reunification services.

## DISCUSSION

Mother contends the agency falsely reported that Marcos harmed her children and that her attorney did not properly defend her. As a reviewing court, we do not reweigh the evidence on which the juvenile court made its findings and orders. Rather, our role is to determine whether substantial evidence supports the court's findings and orders. In this case, we conclude that it does.

Once the juvenile court removes a child from parental custody and orders a plan of reunification, it is required to conduct review hearings at six-month intervals to determine whether the child can be safely returned to the parent and, if not, whether to continue reunification efforts. The court must return the child to parental custody unless it would be detrimental to the child.

In this case, the juvenile court found that it would be detrimental to return the children to mother's custody because she maintained a relationship with Marcos. Despite knowing that she could not maintain a relationship with Marcos and reunify with the children, mother refused to separate from him and even married him. In addition, she acknowledged that she harmed the children by engaging in domestic violence with Marcos. By remaining with Marcos knowing that it was harmful to the children, mother gave the court no choice but to find it would be detrimental to return them to her custody.

4

Mother does not challenge the evidence supporting a finding that her relationship with Marcos poses a threat of detriment to the children. Instead, she contends there was no evidence he physically harmed them and claims the agency's statement in its report that he did is false. The problem with mother's contention is that the agency's report was admitted into evidence and her attorney did not object. Consequently, her attorney forfeited her right to challenge the statement on appeal. Further, even if the agency falsely reported that Marcos physically abused the children and that evidence was excluded from the analysis of detriment, the juvenile court could still find their return would be detrimental based strictly on the fact that it would expose them to domestic violence.

The juvenile court, having found detriment, also decided not to continue mother's reunification services another three months to the 18-month review hearing. The court did so having found there was not a substantial probability the children could be returned to mother in that short timeframe. In order to find a substantial probability of return, the juvenile court must find that the parent consistently and regularly contacted and visited the child, the parent made significant progress in resolving the problem that required the child's removal from the home and demonstrated the capacity and ability to complete the objectives of his or her treatment plan and to provide for the child's safety, protection and physical and emotional well-being. (§ 366.21, subd. (g)(1).) The juvenile court found that mother regularly contacted and visited the children but that she waited too long to engage in her other services. As a result, she made minimal progress in resolving the domestic violence problem and was actually demonstrating an unwillingness to provide the children a safe home by remaining with Marcos.

We conclude in light of the foregoing substantial evidence supports the juvenile court's findings with respect to detriment and substantial probability of return.

Mother further contends her trial attorney did not properly defend her. In essence, she claims she was deprived of effective assistance of counsel. The record does not

5

support her claim.  A petitioner asserting ineffectiveness of counsel must prove trial counsel's performance was deficient, resulting in prejudicial error.  (*In re Kristin H.* (1996) 46 Cal.App.4th 1635, 1667-1668.)  We need not evaluate counsel's performance if petitioner fails to prove prejudicial error; i.e., absent counsel's errors, there is a reasonable probability of a more favorable outcome.  (*In re Nada R.* (2001) 89 Cal.App.4th 1166, 1180.)  Therefore, to prevail on a claim of ineffective assistance of counsel, mother would have to show that but for counsel's performance, the juvenile court would have returned the children to her custody or continued its order for reunification services.

As we explained above, substantial evidence supported the juvenile court's findings with respect to detriment and substantial probability of return.  Consequently, there is no basis for concluding the juvenile court would have ruled differently.

Once the juvenile court determines, as it did here, it cannot safely return a child to parental custody and that the parent cannot reunify with the child within the statutory timeframe, the juvenile court has no choice but to terminate reunification services and set a section 366.26 hearing.  (§ 366.21, subd. (g)(4).)  We find no error.

## DISPOSITION

The petition for extraordinary writ is denied.  This opinion is final forthwith as to this court.